320-0137, people of the state of Illinois, Appaline v. Lonnie K. Farmer, Appellant. Mr. Mallon, are you ready? Yes, Your Honor. May it please the court, counsel. Again, my name is Daniel Mallon. I'm with the State Appellant Defender's Office, and I represent the appellant, Mr. Lonnie Farmer. And today I plan on focusing my argument on the sufficiency of the evidence of the aggravated driving under the influence conviction. And I'd like to also just quickly touch on the excessive sentence issue we raised. But we'll, of course, be able to answer any questions this court may have on any of the issues we raised in the brief. But as to the ag DUI conviction, in order to prove my client guilty, the state was of the car in which he was sitting that was parked on the front lawn of his driveway or front lawn driveway. And the state was required to prove that he was under the influence of alcohol at the time, to such a degree that he was unable to safely operate the car. It's our position, of course, the state failed to meet its burden of proof on both of these elements. So first, as to actual physical control, it's well established that this is determined on a case basis. And when we look at the evidence in this case, the state failed to prove that he was actually able to start the car and drive away before they arrested my client. The evidence showed that when the police encountered my client, he was sitting in his car, which was not running, and which was parked on the grassy driveway on his front yard. The engine was off when the police arrived. And there was no evidence that the hood was warm to the touch. So there was no indication it had recently been running. What the state's main piece of evidence it seems presented to establish actual physical control was police testimony that my client while sitting in the inside the car, had keys in his right front right pocket. This was insufficient, because the state never actually established that those keys were in fact the keys to this car and not, for example, just keys to his house or keys to a different vehicle. There was never any evidence, never any testimony that these keys could actually start the car in which my client was sitting. There was not even any clear evidence that the keys that he had in his pocket actually contained a car key. They very well just could have been his house keys. The state did not offer the keys themselves into evidence. The state did not offer any photographs of the keys. There was nothing presented to the jury as to the actual contents of these keys. So where the state relied heavily on this fact and argued to the jury that he had the keys, they failed to actually prove that they started the car, where they very easily could have. The police never actually attempted to start the car with the keys or never actually described the keys. So whether my client actually had the keys to this vehicle when he was inside it was mere speculation. So absent of showing that he could in fact start the car and considering in light of the fact that he was simply sitting in his car with his dog on the grassy driveway which is located on his front lawn, his private property, we're asking this court to hold that the state failed to prove he had actual physical control of this vehicle beyond a reasonable doubt. For that reason alone it can reverse his conviction. Furthermore, as to the other element was required to prove regarding aggravated DUI, the state failed to prove that my client was actually impaired at the time he was sitting in the car. Now the state may have established that my client had been consuming alcohol on the day he was arrested. However, the state needed to prove more and it failed to do so. It failed to prove beyond a reasonable doubt that he was incapable of driving this car safely on the day or at the time in question. There was never any evidence presented at all that my client was ever driving erratically in any way on the day he was arrested. There was testimony that during the encounter that the police could smell alcohol in my client's breath but it's well established that the state had to prove more than mere consumption of alcohol. Uh the state attempted to prove impairment. Let me let me correct you Mr. Mallon. Does alcohol smell? I'm sorry your honor? Does alcohol smell? Yes your honor alcohol does have an odor. It does or does the alcoholic beverage have an odor? Well alcoholic beverage does have an odor and uh police officers testified. I doubt was he drinking straight alcohol? Um it's unclear what he was consuming on um earlier today. I thought he had keystone beer. Yes there was there was beer in the uh there was that one half open beer that was cold uh inside the car and so and there was not there was no testimony that he was drinking anything else or there was no evidence that he had been drinking. I was I would speculate if he was drinking alcohol for a period of time. He's probably a blind driver. I'm sorry he's probably a blind driver? Yeah drinking straight alcohol. I don't believe there was any evidence that my client had ever been drinking alcohol on the day at issue. Um there was some evidence he was drinking earlier in the day from. Wasn't the testimony that they smelled the odor of an alcoholic beverage? Yes um I'm not sure if there's any uh evidence that or there was no testimony that it was actual alcohol as opposed to beer. Um I believe beer itself has can be has smell like alcohol. It is alcohol beer does contain alcohol and yes there was testimony that and evidence that there was one half drinking can of beer in the car when the police arrived. Oh okay well I won't go any further with it. I don't think you understand what I'm getting at but that's it. Well I mean if I may I believe the police officers could smell the uh could smell alcohol in his breath. Well I think they testified they smelled the odor of an alcoholic beverage. Correct. A beverage has an odor. Correct a beer has a is an alcoholic beverage and I think I they didn't clarify whether or not they smelled beer specifically or anything else. Other than beer um I believe they testified they smelled the odor of alcohol in his breath and beer does contain alcohol and yes. I'll ask I'll ask the prosecutor's office the same question. Thank you. Okay um uh I mean the state again tried to testify that they could his breath smelled like alcohol um but again the state had to prove more than mere consumption whether or not it's alcohol whether or not it's beer whether or not it's wine they have to prove that he is drinking whatever beverage he was drinking to the point that he was unable to control a car safely. Um the state uh presented testimony that my client was slurring his speech but I believe a review of the video exhibit which captured this encounter refutes this testimony. If you review the video shows my client was able to communicate effectively with the police. Um he does not seem to be slurring his speech in the video. Uh perhaps as significantly if you watch the video he is at no point swaying or losing his balance as would be expected from a person who is impaired to the point that he's unable to drive safely. He never stumbles he never staggers which are typical signs of intoxication. And on the video as we emphasized in our brief at one point um my client is in the back of a large SUV a large police SUV after he had been handcuffed and arrested. Um he's sitting there it's in the dark and the police officers asked him to get out of the car out of the big SUV and he's easily able to without any help or assistance from the police. The police didn't even offer any help and assistance. He's able to with his hands cuffed behind his back uh step down from a large stepped SUV uh and reverse himself and he's maintained can completely maintain his balance. He doesn't show any signs of impairment. Um so again while the state did offer evidence that he had been consuming alcohol beer during you know at the time of this incident this really wasn't enough. They had to prove prove more than mere consumption. They had to prove actual impairment. Uh we believe that the evidence or the video evidence completely refutes the testimony of the officers who said they believed he was impaired. Um so for this reason again we would ask this court to reverse his conviction. The state failed to prove both elements of Act DUI beyond reasonable doubt and his conviction should be reversed. Um now if I may I'd just like to briefly touch on the sentencing issue. Uh you know if this court does affirm his conviction we would respectfully ask this court to reduce Mr. excessive. Um my client was sentenced to 10 years in prison for this aggravated DUI which involved him sitting in a car on the front yard driveway in front of his house on private property. He was never seen driving erratically. He didn't cause any damage or harm um and one of the most important factors to consider in sentencing is the severity of the offense and it's our position that a 10-year term in state prison is highly disproportionate to the nature and circumstances of this offense and what I believe is very telling is after trial after reviewing the PSI and after during sentencing when the court asked the state the prosecutor for their recommendation as to a sentence even the state seemed to agree that my client's 10-year sentence was longer than necessary in light of his conduct. The state recommended a sentence that was closer to the minimum and that was less than what the trial court ultimately imposed. The trial court improperly determined that my client has no rehabilitative potential which I believe was an abuse of discretion considering the mitigation that was presented on his behalf. My client acknowledged he has an alcohol problem. My client acknowledged that he was seeking treatment. He expressed remorse for his actions and he explained that he was undergoing several personal problems at the time including a separation from his wife, the recent loss of a pregnancy, and he explained that it contributed to his behavior during the incident and he apologized to the police. Notwithstanding his alcohol abuse disorder that he suffered from, he has a solid work history. He had been working for the more than two decades leading up to this offense and for these reasons we believe that the trial court greatly abused his discretion in imposing a term that's closer to the maximum. My client had never served, even though he has some convictions, some criminal history, had never served a term of more than one year in county jail. Again, the state when asked for a recommendation recommended a sentence that was closer to a minimum for my client. The mitigation evidence that was presented and in light of the nature of this offense which was him sitting in a car on his front lawn undermines the trial court's finding that my client has no rehabilitative potential. So for these reasons, we would ask considering the nature and circumstances of this particular offense for what he was sentenced, we would ask respectfully for this court to either reduce his sentence to a term that is closer to the minimum or at the very least remand for the sentencing range was four to 15 years and he received a 10-year term. So unless this court has any further questions, I reserve my remaining time for rebuttal. You have five minutes for rebuttal. Yes, thank you. Any other questions? No. Just that. Thank you, Mr. Mahoney. Thank you. Mr. Ramos. Thank you. May it please the court. Good afternoon. My name is Jessica Theodoratos and I represent the people. I will also focus on the issues that defendant has focused on during his argument, but I would be happy to explore the other issues presented if it would please the court. Here the evidence provided that defendant was guilty of aggravated driving under the influence beyond a reasonable doubt. The standard of review is in the light most favorable to the prosecution. Could a rational trier of fact have found the essential elements of the crime beyond a reasonable doubt? So first physical control. Defendant possessed the key to the vehicle that was found in his front pocket. He had the ability to operate the vehicle because he was seen driving it immediately prior to police approaching him by an eyewitness. He was in the front seat. Defendant was the only person in the car besides his dog and at any time defendant could have taken the this is the this is the version of events that the prosecution presented. So police found him while he was still in physical control of the vehicle. Now opposing counsel is saying you don't have a linkage between these keys and the key to the car. I believe it's circumstantial evidence enough that the keys that are in his front pocket that he was just driving the car of would be the keys to the vehicle and defendant did not present another version of events. So that would be assumed that the keys would be the same keys that could drive the vehicle. Does defendant have to present another version of the events? No but at this standard of review we have to take the prosecution's version of events. Now we have to view the evidence in the light most favorable to the state. What is the evidence that those were the keys to the car? Well the evidence was that there was keys in his front pocket. I would argue that those keys would be reasonable to make the jump that they were the ones that operated the vehicle. So the evidence is that that's what you would believe? I believe that's what the most logical conclusion to draw is from the man in a vehicle with keys in his front pocket respectfully. Okay second the evidence provided that defendant was under the influence. It's the job of the trier of fact the jury to assess the credibility of the witnesses and the sufficiency of the evidence proving defendant was under the influence. The jury believed the testimony from the three officers who provided a wealth of testimony substantiating that defendant was so impaired he could not operate a vehicle. Officer Paulson testified he responded to a call about defendant driving his Camaro up and down the street and when he arrived he saw a defendant in his car in front of his house. Defendant didn't get out at first but when he did the smell of an alcoholic beverage came clearly from his breath and officer Paulson testified that defendant had slurred speech. Officer Rushing testified that defendant had slurred speech and smelled like alcohol. Officer Rushing testified that defendant could only follow certain commands and became belligerent and upset. Defendant had an open can of beer in the vehicle as well as a box of the same brand of beer that was cold to the touch. Defendant refused to submit to a field sobriety test. Defendant exhibited several attitude changes which led officer Rushing to believe that he was under the influence because he would call her the c word at one moment and then become apologetic and cry. The intimidation victim Mr. Conley testified that defendant was obviously drunk when he interacted with him about an hour earlier to defendant's interaction with police and at that time defendant was so drunk he was using the n word and he couldn't use his motor skills well enough to secure his dog in Mr. Conley's garage. There was also video footage which captured defendant's interactions with police and defendant claims on appeal that this footage shows defendant was not exhibiting the indicators that he was under the influence that law enforcement testified were present. I'm of the opinion that the video support the officer's testimony but ultimately my opinion nor defense counsel's opinion matters because it was the jury's responsibility to resolve any credibility issues and the jury saw the videos and he found that they supported the claim that defendant was under the influence and we cannot substitute our judgment for that of the jury. So ultimately there was more evidence presented to find that defendant was too inebriated to operate a vehicle that evening. Turning to the excessive sentence issue, defendant's 10-year sentence for aggravated DOI is not excessive and the trial court did not abuse its discretion. Defendant argues that the only crime he committed was sitting alone in his car with a dog so that crime was not serious enough warrant a 10-year sentence. That's not what the evidence presented at trial established. The evidence presented at trial provided that defendant was terrorizing neighbor, calling him racial slurs and threatening to shoot him with a gun, drunkenly driving around a small community and letting everyone know his plans to kill his neighbor. This was putting everyone at risk. This was defendant's 6 DOI and he was not allowed to be driving a car at all. A sentence within the statutory range needs to be afforded great deference and a 10-year sentence here is within the spirit of the law because the law wants to protect the public from repeat offenders like defendant. Defendant's criminal history provides that shorter yet numerous prison sentences had no effect on his behavior and a longer sentence was necessary to protect the public. The sentencing range was within the 4 to 15 years and the trial judge found it appropriate to craft a sentence right in the middle of that range. The trial court found numerous factors applicable to defendant's sentencing. His shockingly egregious criminal history involving alcohol and operating motor vehicles, the sentence being necessary to deter others and defendant's lack of rehabilitative potential evidenced by his continued repeated behavior. The trial judge heard the argument that defendant was only sitting in the car and he did not find it to be mitigating. Defense counsel argued at trial that defendant had a good job history for a number of years and wanted to seek AA treatment. This is not persuasive evidence of defendant's potential given the abundant chances defendant has been granted by different criminal justice systems throughout the country. The trial judge considered the seriousness of the crime and defendant's rehabilitative potential and it's assumed that the trial judge considered all the mitigating factors that were present in the record. The judge struck an appropriate balance between the serious nature of this being at least defendant's 6 DUI and defendant's rehabilitative potential that he presented at the sentencing hearing. So this sentence should not be considered an abusive discretion. In conclusion, the people asked this court affirmed defendant's conviction and sentence. Are there any questions I can answer at this time? Thank you very much. First, as to whether or not he had actual physical control. I think as Justice McDade pointed out, it was the state's burden to prove beyond a reasonable doubt that he had actual physical control. Counsel seemed to suggest that the defendant had some sort of burden to present evidence to support that the keys were not able to start the car, but that's simply untrue. It is the state's burden in this case to prove beyond a reasonable doubt. Was there evidence, Mr. Mallon, there that eyewitness testimony that he was driving the What was the time frame on that? Well, here's the time frame. And that's just another point I wanted to clarify. Conley testified that he was working doing construction from about 11 o'clock to 4 o'clock on the day of the incident. And it was about there was maybe three hours during that time. He testified when he observed my client drinking. He didn't say what exactly he was that he seen driving by Mr. Zachary Dunn on the road. And that it's not clear from the record exactly what time it was Mr. Dunn testified that he saw my client driving some point in the early evening. And Mr. Dunn never indicated that my client was impaired when he saw him driving, or that he was driving erratically. Then the police did not report to my client's residence until 715. So there's at least a three hour gap from the time period where Mr. Conley indicated my client had you see my client drinking and to the point 715 when the police arrived and found my client in when it done see him in control of the car on a public road. It wasn't exactly clear what time he testified that he saw my client driving what he said was in the early evening. So so early evening so it isn't four hours is it? It's it's unclear what he meant by early evening if it was five o'clock. It's just not clear from the record. But and I never saw my client drinking or impaired. He testified he didn't testify at all that my client was impaired. But he did testify your client was in control of an automobile. Yes. He testified on a public way presumably. Correct. Yes. He said he was on a driveway. And so then my client arrives home. I think it's notable that the beer was cold. I think that's a fact that supports our argument here because that way we're talking about logical conclusions. What probably occurred is my client came parked went inside his house grabbed beer that was in the refrigerator and went back out his car. All right. And it's very likely that my client only had house keys with him. But we don't know because the state didn't present evidence that the keys in his pocket actually started the car. They didn't even present evidence that the keys contained a car key. Again it was would have been so simple for the state to prove for the police to actually verify that these were the to do so. And again it wasn't my client's burden to present evidence that they were not the keys. It was the state's burden to prove evidence that they were the keys. Okay. Again and would the state have to even go into this key issue if they had a witness close in time to the arrest to say that he was driving the car. Close and no because I believe yes I believe they do need to prove he had actual physical control at the time and they failed to do so. They needed to prove that he was impaired and had actual physical control at the time that they approached the car. That's what the charges and the conviction were predicated on that time period. All right. Because there was no evidence there wasn't evidence at most Mr. Conley's testimony from at least three hours earlier in the day that perhaps he was impaired. What the state relied on was the police officer testimony of impairment at the time he was sitting in the car. So they in fact had to prove that he had physical control of the car when he was sitting inside. Very brief. Yes. Could you clarify? I thought that the incident that forms the basis for the intimidation charge happened at six o'clock. Oh I was my reading the record and perhaps if I'm I misread but based on reviewing the testimony it was and it was Mr. Conley's testimony that he was located from 11 to 4 and that's when the incident occurred on Conley's property with the dog. Okay. All right. I see that I'm out of time so thank you your honors and if you have no further questions we submit this case for your consideration. I think uh there are any questions I want to thank you Mr. Mahon and thank you Mr. Roberts for taking this matter under advisement to be written disposition  We will now take a recess I think until September. Thank you.